CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

JAN 24 2024

LAURA A. AUSTIN, CLERK
BY:  s/ H. MCDONALD
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| NETTAX, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 4:23-cv-00031 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| POSSO PIZZA, INC., *et al.*, | ) | By:   Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendants. | ) | |

Plaintiff NetTax, LLC ("NetTax") brought this action against Defendants Posso Pizza, Inc. ("Posso"), COI Pizza, LLC ("COI" and, together with Posso, "Client Defendants"), and Richard Butcher ("Butcher" and, together with Client Defendants, "Defendants"), alleging three causes of action related to a consulting services agreement (the "Agreement") with Client Defendants: (1) breach of contract by Client Defendants; (2) fraud by all Defendants; and (3) business conspiracy by all Defendants.

The matter is now before the court on Butcher's motion to dismiss for lack of personal jurisdiction and Defendants' partial motion to dismiss for failure to state a claim and to strike any claim for damages in excess of the fee specified in the Agreement. The motions have been fully briefed and argued and are ripe for decision. For the reasons discussed below, the court will deny each motion.

## I.   STATEMENT OF FACTS

The following facts are taken from NetTax's complaint and, at this stage, are presumed true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On October 29, 2021,[1] Client Defendants and NetTax entered into the Agreement for NetTax to "provide consulting services to help Client Defendants obtain COVID employee retention tax credits from the [Internal Revenue Service ("IRS")] under . . . the federal CARES Act." (Compl. ¶ 6.) Client Defendants operate Domino's Pizza franchises in Hawaii. (*Id.* ¶ 5.) Although they are separate entities, both are Hawaii residents and jointly signed the Agreement. (*See id.* ¶¶ 2–3, Ex. A.) Butcher, a Georgia resident and "an independent investor in and independent contractor consultant to Client Defendants," did not personally sign the Agreement but was allegedly involved in discussions related to it from October 2021 through January 2023. (*See id.* ¶¶ 4, 18, 24–27, 38–44, Ex. A.) "The negotiation, signing and performance of the Agreement all materially occurred in . . . Martinsville, Virginia." (*Id.* ¶ 9.)

As part of the Agreement, NetTax analyzed Client Defendants' data, identified their eligibility for IRS tax credits, and prepared documents for Client Defendants to file with the IRS to claim the tax credits (the "Work Product"). (*Id.* ¶ 7.) In exchange, Client Defendants agreed to pay NetTax 25% of the total amount of the tax credits that NetTax identified as available to them (the "Fee"). (*Id.* ¶ 8, Ex. A.) Half of the Fee was due upon receipt of the Work Product and the other half upon receipt of the tax credits from the IRS. (*Id.*) Posso and COI are jointly and severally liable for the Fee. (*Id.* ¶ 16.)

In May 2022, NetTax began delivering its work to Defendants. (*Id.* ¶ 15.) Upon receipt, Client Defendants and Butcher purportedly reviewed and signed-off on the Work Product.

---

[1] Although immaterial to the instant motions, Defendants correctly point out that NetTax and Client Defendants did not sign the Agreement until November 8, 2021, despite the Agreement's opening paragraph stating that "[t]his Agreement is made this 29 day of October 2021." (*See* Compl. Ex. A [ECF No. 1-1]; Br. Supp. Defs.' Mot. Dismiss at 2 n.2 [ECF No. 10].)

(*Id.* ¶ 26.) They told NetTax, however, that Client Defendants could not pay the first half of the Fee at that time—as required by the Agreement—but would pay in full when they received the tax credits from the IRS. (*Id.* ¶ 15.) Defendants also encouraged NetTax to keep providing its services under the Agreement. (*Id.* ¶ 26.) NetTax did so and claims that it fully performed under the Agreement, identifying that Client Defendants were eligible for tax credits for the first and second fiscal quarters of 2021. (*Id.* ¶¶ 11–12.) Specifically, NetTax determined that Client Defendants were eligible for $4,261,623.33 in total employee retention tax credits— $3,742,544.72 for Posso and $519,078.61 for COI. (*Id.* ¶ 13.) Client Defendants therefore owed NetTax a total Fee of $1,065,405.84, assuming they received all of the identified tax credits from the IRS. (*Id.* ¶ 14.) Client Defendants have received at least some of those tax credits but have not paid any part of the Fee.[2] (*Id.* ¶¶ 15, 17.)

NetTax contends that Client Defendants' non-payment of the Fee is part of an intentional plan orchestrated by Butcher, Posso, and COI, working together, for Client Defendants to shirk their contractual obligations. Before signing the Agreement, Client Defendants and Butcher allegedly learned that NetTax was charging another customer a 15% fee for similar services and that customer's payment was due only when it received its tax credits from the IRS. (*Id.* ¶¶ 24–25.) Defendants supposedly then determined that Client Defendants would only pay NetTax on the same, or similar, terms. (*Id.*) Still, Defendants allegedly decided before the Agreement was signed that Client Defendants would enter into it

---

[2] NetTax alleges that Client Defendants have received the full amount of tax credits identified in the Work Product. (*See id.* ¶ 17.) Defendants disputed this at the motions hearing, asserting that they have received a fraction of the identified amounts to date because of the IRS's backlog in processing applications for employee retention tax credits.

while concealing their true intentions not to pay the agreed-upon Fee. (*Id.*) According to NetTax, Defendants purposefully misrepresented their intentions so that NetTax would enter into the Agreement and provide its services to them. (*Id.* ¶¶ 30, 31, 34.)

NetTax claims that it did not know of Defendants' true intentions when entering into the Agreement and sharing its Work Product. (*Id.* ¶¶ 31–33.) Instead, NetTax only discovered their alleged fraud after it had fully performed under the Agreement and Client Defendants had received tax credits from the IRS. (*Id.* ¶ 28.) Apparently, to justify the non-payment, Defendants cited the information that they learned about the other NetTax customer's contract before entering into the Agreement. (*Id.* ¶ 29.)

As part of the scheme for Client Defendants to skirt their payment obligations, Defendants purportedly met in December 2022 and January 2023 to discuss how to strongarm NetTax into reducing its invoices. (*Id.* ¶ 38.) They allegedly agreed that Butcher would call NetTax and threaten to damage its business if it did not reduce the Fee. (*Id.*) Butcher's threat would seemingly carry significant weight because he had previously informed NetTax about his influence among Domino's Pizza and other national restaurant franchises, knowing that market is a key part of NetTax's business. (*See id.* ¶ 39.)

Subsequently, in January 2023, Butcher called a NetTax executive at his office in Martinsville, Virginia. (*Id.* ¶ 40.) During that call, Butcher evidently said that Client Defendants had "directed him to communicate with NetTax to address the past due invoices" because they "never intended to pay the 25% rate or follow the payment procedures described in the Agreement." (*Id.* ¶¶ 41, 43.) After the NetTax executive refused to reduce the invoices, Butcher apparently became angry and threatened to 'choke out' NetTax's business. (*Id.* ¶ 44.)

In October 2023, nine months after Butcher's phone call, NetTax filed the present action in the Circuit Court of the City of Martinsville, asserting claims of (1) breach of contract by Client Defendants; (2) fraud by all Defendants; and (3) business conspiracy, in violation of Va. Code Ann. § 18.2-499, by all Defendants. (*See generally* ECF No. 1.) On November 22, 2023, Defendants removed the suit to federal court under 28 U.S.C. § 1441(b). (*Id.*) Defendants subsequently filed two motions: (1) a motion to dismiss Butcher for lack of personal jurisdiction (Butcher's Mot. Dismiss [ECF No. 7]); and (2) a motion (a) to dismiss any breach of contract claim against Butcher and the fraud and conspiracy claims against all Defendants for failure to state a claim, and (b) to strike any claimed damages in excess of the Fee (Defs.' Mot. Dismiss [ECF No. 9]). The court heard arguments on these motions on January 11, 2024. (ECF No. 23.)

## II.   STANDARDS OF REVIEW

### A.  Federal Rule of Civil Procedure 12(b)(2)

A Rule 12(b)(2) motion to dismiss challenges the court's personal jurisdiction over a defendant. Fed. R. Civ. P. 12(b)(2). When faced with such a challenge, the plaintiff has the burden of proving jurisdiction by a preponderance of the evidence. *Mylan Lab'ys, Inc. v. Akzo, N.V.*, 2 F.3d 56, 59–60 (4th Cir. 1993). Where, as here, "the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, . . . supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a prima facie showing of personal jurisdiction to survive the jurisdictional challenge." *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016) (cleaned up). In determining whether the plaintiff has carried this burden, the court must "construe all relevant pleading allegations in the light most

favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).

## B. Federal Rule of Civil Procedure 12(b)(6)

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "'naked assertion[s]' devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). A claim for fraud must also comply with the special pleading requirements of Federal Rule of Civil Procedure 9(b). *Id.* at 686–87.

## C. Federal Rule of Civil Procedure 12(f)

Rule 12(f) permits the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[S]triking a portion of a pleading is a drastic remedy," and motions to do so are "generally viewed with disfavor." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (quotations omitted). When a motion to strike is made, the moving party bears the burden to show that it is prejudiced by the challenged material. *Hardy v. Lewis Gale Med. Ctr., LLC*, 377 F. Supp. 3d 596, 605 (W.D. Va. 2019); *see also* 5A Charles Alan Wright & Arthur D. Miller, Federal Practice

and Procedure § 1382 (3d. ed. 2021). Any doubt about whether the challenged material should be stricken is resolved in favor of the non-moving party. *Sturdivant v. Arc of Haywood Cnty., Inc.*, No. 1:18-cv-123, 2018 WL 2138543, at *1 (W.D.N.C. May 9, 2018); Wright & Miller § 1382. "Absent a strong reason for doing so, courts will generally not tamper with pleadings." *McKague v. HSCGP, LLC*, No. 4:22-cv-00018, 2022 WL 3010472, at *2 (W.D. Va. July 29, 2022) (quoting *Nwachukwu v. Karl*, 216 F.R.D. 176, 178 (D.D.C. 2003)).

### III.   ANALYSIS

Because none of Defendants' 12(b)(2), 12(b)(6), or 12(f) arguments are persuasive at this stage, the court will deny each of their motions.

### A.  Personal Jurisdiction

Butcher asserts that he is not subject to personal jurisdiction in this court because he is an out-of-state resident, Virginia's long-arm statute does not authorize personal jurisdiction over him, and he did not have sufficient minimum contacts with Virginia. Conversely, NetTax argues that Butcher is subject to specific personal jurisdiction in Virginia because he purposefully and repeatedly transacted business in the Commonwealth related to the Agreement.[3] Viewing the complaint in the light most favorable to NetTax, the court will deny Butcher's motion to dismiss for lack of personal jurisdiction.

Generally, a court applies a two-part test to determine if it has specific personal jurisdiction over a defendant: (1) whether the standards of the forum state's long-arm statute are satisfied; and (2) whether the exercise of personal jurisdiction satisfies the Fourteenth

---

[3] NetTax does not assert general jurisdiction as a basis for the court's personal jurisdiction over Butcher, so the court only considers whether it has specific personal jurisdiction over him.

Amendment's Due Process Clause. *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292, 301 (4th Cir. 2012). But Virginia's long-arm statute, Va. Code Ann. § 8.01-328.1, extends personal jurisdiction to the outer bounds of due process, so when Virginia is the forum state the two-part test collapses into a single inquiry. *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 293 (4th Cir. 2009). This merged inquiry means that if exercising personal jurisdiction over a defendant satisfies due process, then the requirements of Virginia's long-arm statute are also satisfied. *Id.* Therefore, the court only needs to determine if exercising personal jurisdiction over Butcher "is consonant with the strictures of due process." *Tire Eng'g & Distrib., LLC*, 682 F.3d at 301.

Due process dictates that the court can only exercise specific personal jurisdiction over a defendant if the defendant had "sufficient 'minimum contacts'" with Virginia "such that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). The defendant's contacts with Virginia must be enough for him to "reasonably anticipate being haled into court" in the Commonwealth "on a claim arising out of those contacts." *Sneha Media & Ent., LLC v. Associated Broad. Co. P. Ltd.*, 911 F.3d 192, 198 (4th Cir. 2018). In other words, the defendant must have purposefully directed activities at Virginia *and* the lawsuit must arise from those activities. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). This analysis is not mechanical, and the court weighs the "totality of the facts" when determining whether to exercise personal jurisdiction over a defendant. *See Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 189 (4th Cir. 2016).

In the Fourth Circuit, courts apply a three-prong test to determine if due process authorizes specific personal jurisdiction over a defendant in the forum state: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp.*, 561 F.3d at 278 (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002)). As discussed below, this test demonstrates that Butcher's instant motion to dismiss must be denied.

Before analyzing each prong, however, it is important to emphasize that denying Butcher's motion at this stage "does not finally settle the issue" of the court's personal jurisdiction over him for the remainder of the matter. *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 n.5 (4th Cir. 2005) (citation omitted). Instead, NetTax "must eventually prove the existence of personal jurisdiction by a preponderance of the evidence, either at trial or at a pretrial evidentiary hearing." *Id.* (citation omitted). This requirement is particularly relevant here because the complaint is thin on details,[4] and the parties have starkly different accounts about Butcher's contact with Virginia. Accordingly, Butcher can renew his objection to personal jurisdiction later in the proceedings if the facts reveal that he did not have sufficient minimum contacts with Virginia.

---

[4] At the hearing, NetTax indicated that the complaint does not contain all of the information that it has about Butcher's involvement with the Agreement and contact with Virginia. Although not essential on the current motion to dismiss, the court notes that it would have been beneficial for NetTax to include any such information in its complaint. NetTax will eventually need to provide additional details about Butcher's contacts with Virginia to prove that the court has personal jurisdiction over him. *See New Wellington Fin. Corp.*, 416 F.3d at 294 n.5.

## 1. Purposeful Availment

Turning to the first prong of the due-process test, "[t]he purposeful availment inquiry is grounded on the traditional due process concept of 'minimum contacts.'" *River Cmty. Bank, N.A. v. Bank of N.C.*, No. 4:14-cv-00048, 2014 WL 7240344, at *4 (W.D. Va. Dec. 18, 2014) (quoting *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 559 (4th Cir. 2014)). When analyzing this prong, the following non-exclusive factors aid the court in determining whether a defendant in the business context purposefully availed itself of the law of the forum state:

> (1) whether the defendant maintained offices or agents in the State; (2) whether the defendant maintained property in the State; (3) whether the defendant reached into the State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the defendant made in-person contact with a resident of the State regarding the business relationship; (7) whether the relevant contracts required performance of duties in the State; and (8) the nature, quality, and extent of the parties' communications about the business being transacted.

*Sneha Media & Ent., LLC*, 911 F.3d at 198–99. This inquiry is flexible, and the court considers the factors on a case-by-case basis. *Universal Leather, LLC*, 773 F.3d at 560. A plaintiff need not establish each factor to make out a prima facie case of jurisdiction. *See Lagonia v. Ratliff*, 438 F. Supp. 3d 607, 613 (W.D.N.C. 2020).

Taking NetTax's claims as true at this stage, Butcher's contacts with Virginia were significant.[5] The complaint states that Butcher directed tortious conduct toward Virginia by

---

[5] Defendants, on the other hand, assert that Butcher's sole contact with Virginia was a single phone call to a NetTax executive. (Br. Supp. Butcher's Mot. Dismiss at 6 [ECF No. 8].) If this truly was his only contact with the Commonwealth, then Defendants are correct that Butcher's contacts with Virginia are insufficient for him to be subject to personal jurisdiction here. *See, e.g.*, *Consulting Eng'rs Corp.*, 561 F.3d at 279–80 (ruling that a defendant's four phone calls and eight emails directed to a Virginia resident did not establish personal

perpetrating a fraud with Client Defendants against NetTax, a Virginia entity. (*See generally* Compl. ¶¶ 1, 23–36.) Moreover, Butcher purportedly helped Client Defendants enter into the Agreement in 2021, which is governed by Virginia law and confers jurisdiction in Virginia courts. (*Id.* ¶¶ 24–25, Ex. A.) Then, over the next 15 months, Butcher allegedly engaged in numerous business dealings with NetTax relating to the Agreement. He supposedly reviewed and signed-off on the Work Product that NetTax provided. (*Id.* ¶ 26.) Further, he negotiated with NetTax to allow for a delay in payment. (*Id.* ¶¶ 15, 27.) He also called one of NetTax's executives in Virginia to request an invoice reduction and to relay that Client Defendants would not pay the Fee. (*Id.* ¶¶ 40–43; Decl. Butcher ¶ 5 [ECF No. 8-1].) And he apparently threatened to 'choke out' NetTax's business by using his personal influence among Domino's Pizza and other national restaurant franchises, a key part of NetTax's business. (Compl. ¶¶ 39, 44.)

To be sure, the complaint does not allege that Butcher maintained offices, agents, or property or made in-person contact with NetTax in the Commonwealth. But overall, Butcher's purportedly sustained dealings with NetTax in Virginia were more than "random, fortuitous, or attenuated contacts." *Burger King*, 471 U.S. at 475 (cleaned up). Instead, if true, they support a finding that Butcher should have anticipated being haled into court in Virginia for his actions, especially considering that he allegedly effectuated a fraud against a Virginia resident related to an agreement governed by Virginia law. *See, e.g.*, *Vishay Intertechnology, Inc. v. Delta Int'l Corp.*, 696 F.2d 1062, 1069 (4th Cir. 1982) (noting that the defendant reasonably should have

---

jurisdiction over the defendant). At this time, however, the court must construe the conflicting claims about Butcher's contact with Virginia in the light most favorable to NetTax. *See Combs*, 886 F.2d at 676.

expected to be haled into a state's court when he directed tortious conduct toward an entity in that state). Therefore, based on the current record, the court finds that Butcher purposefully availed himself of conducting business in Virginia. *See, e.g.*, *Brian Wishneff & Assocs. LLC v. Delshah Dev., Inc.*, No. 7:19-cv-00190, 2019 WL 5865939, at *5 (W.D. Va. Nov. 8, 2019) (finding purposeful availment where a defendant frequently communicated with the plaintiff—a Virginia entity—over a multi-year period about a tax-credit-consulting agreement, despite the defendant lacking a physical presence in Virginia and the agreement including a New York choice-of-law provision).

## 2. Activities Directed at Virginia

The second prong of the personal jurisdiction test is also satisfied because Butcher directed his activities at Virginia.

> The analysis here is generally not complicated. Where activity in the forum state is the genesis of the dispute, this prong is easily satisfied. A plaintiff's claims similarly arise out of activities directed at the forum state if substantial correspondence and collaboration between the parties, one of which is based in the forum state, forms an important part of the claim.

*Tire Eng'g & Distrib., LLC*, 682 F.3d at 303 (citing *CFA Inst.*, 551 F.3d at 295–96) (cleaned up). As discussed above, NetTax's claims against Butcher are based largely on correspondence between Butcher and NetTax, which is located in Virginia. Accordingly, the allegations against Butcher satisfy this prong.

## 3. Constitutional Reasonableness

The third prong of the personal-jurisdiction analysis permits a court to consider additional factors to determine if exercising personal jurisdiction over a defendant would be constitutionally reasonable. Importantly, if a defendant who satisfies the first two prongs of

the due-process test seeks to defeat a court's jurisdiction over him, "he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477. At bottom, this last step in the personal jurisdiction inquiry is meant to "ensure[] that litigation is not so gravely difficult and inconvenient as to place the defendant at a severe disadvantage in comparison to his opponent." *CFA Inst.*, 551 F.3d at 296 (cleaned up). In analyzing this prong, the court considers certain factors, including: "(1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; [and] (3) the plaintiff's interest in obtaining convenient and effective relief."[6] *Consulting Eng'rs Corp.*, 561 F.3d at 279.

Applying those factors here reveals that it is constitutionally reasonable for the court to exercise personal jurisdiction over Butcher. Although Butcher—an out-of-state resident—may be slightly inconvenienced by litigating in Virginia, any inconvenience is not particularly burdensome, as evidenced by the fact that he has already secured counsel to represent his interests. *See CFA Inst.*, 551 F.3d at 296 (finding that an Indian entity being haled into Virginia court was not particularly burdensome when the entity had secured counsel to represent its interests there). Additionally, adjudicating the dispute in this court is appropriate because Virginia has an interest in ensuring its residents are not defrauded by out-of-state parties and NetTax has an interest in having its rights vindicated in the convenient forum of its home state. *See River Cmty. Bank, N.A.*, 2014 WL 7240344, at *6 (citing *CFA Inst.*, 551 F.3d at 297).

---

[6] Other factors that may, but need not, be considered are "the shared interest of the states in obtaining efficient resolution of disputes" and "the interests of the states in furthering substantive social policies." *River Cmty. Bank, N.A.*, 2014 WL 7240344, at *6 n.3. These factors are not salient to Butcher's motion, so the court does not analyze them here.

In sum, NetTax has made a prima facie showing that the court exercising personal jurisdiction over Butcher satisfies due process, so the court will deny his Rule 12(b)(2) motion.

## B. Failure to State a Claim

Contemporaneously with Butcher's 12(b)(2) motion, Defendants moved to dismiss any breach of contract claim against Butcher and the fraud and business-conspiracy claims against all Defendants for failure to state a claim. (Defs.' Mot. Dismiss at 1.) The parties agree that Virginia law applies to each of NetTax's claims for breach of contract, fraud, and business conspiracy.[7] For the reasons discussed below, the court will deny Defendants' motion in full.

### 1. Breach of Contract

As the parties acknowledged at the hearing, NetTax only brought its breach of contract claim against Client Defendants. (*See* Compl. ¶¶ 19–22.) Accordingly, the court will deny as moot Defendants' motion to dismiss this claim against Butcher (*see* Defs.' Mot. Dismiss at 1).

---

[7] As a federal court sitting in diversity, the court must apply the choice-of-law rules of the state in which it sits—Virginia. *See Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 623–24 (4th Cir. 1999) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941)).

For the breach of contract claim, Virginia law gives effect to choice-of-law clauses in the relevant contract, except in unusual circumstances. *Id.* at 624. Virginia substantive law therefore applies to NetTax's breach of contract claim because the Agreement specifies that it "shall be governed by and construed in accordance with the laws of the State of Virginia," and the parties do not note any unusual circumstances related to this provision. (Compl. Ex. A at 2.)

For the fraud and business-conspiracy claims, Virginia's choice-of-law rules dictate that "the law of the place of the wrong" (*lex loci delicti*) supplies the substantive law for those claims. *Milton v. IIT Rsch. Inst.*, 138 F.3d 519, 521 (4th Cir. 1998). "The place of the wrong means the location where the last event necessary to make an act liable for an alleged tort takes place." *Lyons v. Ticor Greene*, No. 5:21-cv-00010, 2022 WL 2532460, at *1 n.2 (W.D. Va. July 7, 2022) (quoting *Quillen v. Int'l Playtex, Inc.*, 789 F.2d 1041, 1044 (4th Cir. 1986)) (cleaned up). Virginia substantive law therefore applies to the fraud and business-conspiracy claims because the last event necessary for each of these claims was NetTax's reasonable reliance on Defendants' purportedly false representations, which took place in Virginia when NetTax began performing its obligations under the Agreement. *See id.* (discussing choice of law for a fraud claim); *St. Paul Fire & Marine Ins. Co. v. Hoskins*, No. 5:10-cv-00087, 2012 WL 748574, at *4 (W.D. Va. Mar. 7, 2012) (discussing choice of law for a business-conspiracy claim).

## 2. Fraud

Defendants also move to dismiss NetTax's fraud claim. Under Virginia law, "where a party 'makes [a] promise, intending not to perform, his promise is a misrepresentation of present fact, and if made to induce the promisee to act to his detriment, is actionable as an actual fraud.'" *Sanford v. Smith*, 490 F. App'x 570, 571 (4th Cir. 2012) (quoting *Colonial Ford Truck Sales, Inc. v. Schneider*, 325 S.E.2d 91, 94 (Va. 1985)).

At the hearing, Defendants briefly argued that NetTax's fraud claim could not survive solely based on their purported intention not to pay under a contract. Despite seemingly recognizing that *Colonial Ford* expressly refutes that contention, Defendants attempted to distinguish that case by contrasting (1) a defendant's statements in *Colonial Ford* about the plaintiff "be[ing] paid for all parts and equipment" and "not los[ing] a penny," 325 S.E.2d at 92, with (2) NetTax's lack of allegations about Defendants' specific statements promising to pay for its services. That is a distinction without a practical difference. Indeed, *Colonial Ford* is on all fours with the instant matter. As in that case, the fraud claim here is based on representations—that were supposedly false when made—about fulfilling contractual payment obligations. Those misrepresentations are sufficient to state a claim for fraud under Virginia law. *See id.* at 94; *see also T.G. Slater & Son, Inc. v. Donald P. & Patricia A. Brennan LLC*, 385 F.3d 836, 844 (4th Cir. 2004) (sustaining a claim for fraud based on the defendants allegedly promising, but not actually intending, to pay the plaintiff for his services).

Turning to Defendants' principal arguments, they assert that the fraud claim should be dismissed because NetTax does not plead facts with sufficient particularity and only alleges damages associated with a breach of contract. (*See* Br. Supp. Defs.' Mot. Dismiss at 8–9; Reply

Br. Supp. Defs.' Mot. Dismiss at 2–6 [ECF No. 16].) Defendants also argue that the fraud claim should be dismissed as to Butcher specifically because he was an agent of Client Defendants and did not have a duty to disclose any information to NetTax. (Br. Supp. Defs.' Mot. Dismiss at 9–10.) NetTax opposes each of Defendants' arguments and maintains that its complaint sets forth ample facts to sustain a fraud claim against each of Posso, COI, and Butcher. (*See generally* Br. Opp'n Defs.' Mot. Dismiss at 3–7 [ECF No. 12].)

### i.   **Fraud Claim Against All Defendants**

Fraud claims are subject to the special pleading standards of Federal Rule of Civil Procedure 9(b): "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Applying these standards to NetTax's fraud claim, the complaint contains enough detail to satisfy Rule 9(b).

### a.   **Circumstances Pleaded with Particularity**

Rule 9(b) requires that NetTax plead with particularity the circumstances of the fraud. *Id.* This requirement sets forth a heightened pleading standard under which NetTax must allege "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Walker v. Hill*, No. 21-1803, 2023 WL 129436, at *5 (4th Cir. Jan. 9, 2023) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)). In other words, the complaint must set forth the who, what, when, where, and why of the alleged fraud. *See id.* at *5–6; *see also U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (describing the standard

set forth in *Harrison*, 176 F.3d at 784 as the "who, what, when, where, and how of the alleged fraud") (cleaned up).

In this case, NetTax pleads the what, when, where, and why of Defendants' false representations as follows:

- *What*: Defendants purposely misrepresenting their intentions for Client Defendants to perform under the Agreement. (Compl. ¶¶ 24–25, 30.)

- *When*: The false representations allegedly occurred in late-October and early-November 2021 when Defendants negotiated, and Client Defendants entered into, the Agreement. (*Id.* ¶ 6, Ex. A.)

- *Where*: The false representations were received and relied upon by NetTax in Martinsville, Virginia, as part of the negotiation and signing of the agreement. (*Id.* ¶ 9.)

- *Why*: Defendants made the false representations to induce NetTax to enter into the Agreement and provide consulting services to Client Defendants that it would not have provided if it knew Defendants' true intentions. (*See id.* ¶ 31.)

Whether NetTax "sufficiently pleaded the 'who' is a closer issue." *Walker*, 2023 WL 129436, at *6. Typically, "a plaintiff can't satisfy Rule 9(b) by lumping together 'defendants as a group,' without specifying who said what." *Id.* (quoting *U.S. ex rel. Ahumada v. NISH*, 756 F.3d 268, 281 n.9 (4th Cir. 2014)). But where fraud is based on omissions rather than affirmative statements—as NetTax alleges—numerous district courts in the Fourth Circuit have adopted a relaxed pleading requirement to "accommodate[] the difficulties associated with pleading omissions." *Singh v. Lenovo (U.S.) Inc.*, 510 F. Supp. 3d 310, 326 (D. Md. 2021) (collecting cases); *see also* Wright & Miller § 1297 n.12 (collecting cases where courts allowed fraud claims to proceed despite collective allegations against the defendants). Although not

explicitly adopted by the Fourth Circuit, this relaxed standard "comports with [its] instruction that '[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts.'" *Schwartz v. Pella Corp.*, No. 2:14-cv-00556, 2014 WL 7264948, at *6 (D.S.C. Dec. 18, 2014) (quoting *Harrison*, 176 F.3d at 784). In fact, the Fourth Circuit recently resuscitated a fraud claim against a defendant that did not differentiate between that defendant's and her agent's fraudulent actions because the complaint provided the defendant sufficient notice of the allegations against her. *See Walker*, 2023 WL 129436, at *6.

In this matter, NetTax asserts that the false representations were made by "Client Defendants and Butcher" or "Defendants." (*See, e.g.*, Compl. ¶¶ 24–25, 30–31.) Though these allegations do not specify the allegedly fraudulent representations by each party, that is not fatal to NetTax's fraud claim. The claim is based on Defendants' omissions of their true intentions, and the complaint provides sufficient information to put each Defendant "on notice" of its allegedly fraudulent conduct so that each can formulate a defense against the claim. *See Walker*, 2023 WL 129436, at *6 (citing *Harrison*, 176 F.3d at 784). Accordingly, the court adopts the relaxed standard used by other district courts in this Circuit for omission-based fraud claims and finds that NetTax sufficiently pleads the circumstances of Defendants' fraud. *See Singh*, 510 F. Supp. 3d at 326.

### b. Mental State Pleaded Generally

Unlike the first sentence of Rule 9(b), the second sentence does not subject allegations of "malice, intent, knowledge, and other conditions of a person's mind," to a heightened

pleading standard. Fed. R. Civ. P. 9(b); *see Iqbal*, 556 U.S. at 686–87. A plaintiff may plead these

mental states generally, although the allegations still must satisfy the standards of Federal Rule

of Civil Procedure 8. *Iqbal*, 556 U.S. at 686–87. Indeed, "[t]he second sentence of Rule 9(b)

allows conclusory allegations of defendant's knowledge as to the true facts and of defendant's

intent to deceive." *Harrison*, 176 F.3d at 784. A leading treatise provides helpful insight on the

purpose of this general standard:

> The concept behind this portion of Rule 9(b) is an understanding
> that any attempt to require specificity in pleading a condition of
> the human mind would be unworkable and undesirable. It would
> be unworkable because of the difficulty inherent in ascertaining
> and describing another person's state of mind with any degree of
> exactitude prior to discovery. A rigid rule requiring the detailed
> pleading of a condition of mind would be undesirable because it
> would run counter to the general "short and plain statement of
> the claim" mandate in Federal Rule of Civil Procedure 8(a) . . . .

Wright & Miller § 1301.

The second sentence of Rule 9(b) is relevant in the present case because NetTax claims

that Defendants' fraud was based on their mental states when negotiating and entering into

the Agreement. (*See* Compl. ¶¶ 24–27, 30.) Prior to entering into the Agreement, but after

learning that another NetTax customer had better payment terms, Defendants purportedly

hid their intentions that Client Defendants would not pay the Fee as required by the

Agreement. (*Id.* ¶¶ 24–25.) Further, the complaint states that Defendants "[i]ntentionally and

knowingly" and with "malice" misled NetTax for the purpose of inducing NetTax to enter

into and perform services under the Agreement. (*Id.* ¶¶ 31, 34.) Although these are general

statements, they satisfy the pleading requirements for "malice, intent, knowledge, and other

conditions of a person's mind" under Rule 9(b). *See Kindred v. McLeod*, No. 3:08-cv-00019, 2010

WL 4814360, at *7 (W.D. Va. Nov. 19, 2010) (sustaining a fraud claim based on the plaintiff's general statements that the defendants "intentionally," "knowingly," and "willfully" misrepresented their intentions to plaintiff to induce her to enter into a contract); *Beck v. Peiffer*, No. CIV.A. RDB-11-3075, 2012 WL 2711253, at *5 (D. Md. July 6, 2012) (finding that Rule 9(b)'s pleading standards were satisfied based on allegations that the defendants "knew [certain] statements were false or, at the very least, made those statements knowing they would not be honored").

As demonstrated by Defendants' detailed arguments on brief, NetTax sets forth enough facts to comport with Rule 9(b)'s basic purpose of putting each Defendant on notice of the claims against it so as to allow it to prepare a defense. *See Walker*, 2023 WL 129436, at *6; Wright & Miller § 1298. The complaint satisfies Rule 9(b)'s pleading standards for a fraud claim.

### c.  Damages

Defendants' next argument that the fraud claim should be dismissed in its entirety is that NetTax does not claim damages other than those associated with the alleged breach of contract. (*See* Br. Supp. Defs.' Mot. Dismiss at 11–12; Reply Br. Supp. Defs.' Mot. Dismiss at 6.) That argument is meritless and ignores the reality that plaintiffs may plead alternative theories of recovery. NetTax asserts in its complaint that Defendants' fraud caused it to "suffer[] damages in excess of $1,000,000," along with "costs, enforcement expenses and attorney fees." (Compl. ¶ 35.) It is of no consequence at this stage that NetTax also alleges Client Defendants' breach of contract resulted in a similar amount—specifically, "damages in excess of $1,065,405.84, lost interest on the unpaid amounts," and "costs, enforcement

expenses and attorney fees." (*Id.* ¶ 22.) A plaintiff can independently plead both breach of contract and fraud in the same complaint arising out of the same series of occurrences even if it seeks similar damages for both counts. *See, e.g.*, *Pre-Fab Steel Erectors, Inc. v. Stephens*, No. 6:08-cv-00039, 2009 WL 891828, at *4, *14 n.12, *16 n.14 (W.D. Va. Apr. 1, 2009); *cf.* Fed. R. Civ. P. 8(d) (permitting alternative pleading). As such, the court will not dismiss NetTax's fraud claim on this ground.

### ii. Fraud Claim Against Butcher

As an alternative to their argument that the fraud claim should be dismissed in its entirety, Defendants argue that the fraud claim should be dismissed as to Butcher individually because he was an agent of Client Defendants and did not have an independent duty to disclose information to NetTax. (Br. Supp. Defs.' Mot. Dismiss at 9–10.) The court rejects these arguments.

### a. Agency

The complaint does not establish conclusively that Butcher was Client Defendants' agent. Under Virginia law, the party asserting an agency relationship has the burden of proving it; there is "no presumption that an agency exists." *Raney v. Barnes Lumber Corp.*, 81 S.E.2d 578, 584 (Va. 1954). "On the contrary[,] one is legally presumed to be acting for himself and not as the agent of another." *Id.* An agency relationship results from "one person's manifestation of consent to another person that the other shall act on his behalf and subject to his control, and the other person's manifestation of consent so to act." *Bocek v. JGA Assocs., LLC*, 616 F. App'x 567, 574 (4th Cir. 2015) (quoting *Reistroffer v. Person*, 439 S.E.2d 376, 378 (Va. 1994)). "The power of control is the determining factor in ascertaining the alleged agent's status."

*Tingler v. Graystone Homes, Inc.*, 834 S.E.2d 244, 266 (Va. 2019) (quoting *Allen v. Lindstrom*, 379 S.E.2d 450, 454 (Va. 1989)). In determining the power of control, "direct evidence is not indispensable—indeed frequently is not available—but instead circumstances may be relied on, such as the relation of the parties to each other and their conduct with reference to the subject matter of the contract." *Acordia of Va. Ins. Agency, Inc. v. Genito Glenn, L.P.*, 560 S.E.2d 246, 250 (Va. 2002) (cleaned up). This determination, however, must be made by the fact finder "unless the existence of [an agency] relationship is shown by undisputed facts or by unambiguous written documents." *Id.* (quotations omitted).

NetTax alleges that Butcher was "an independent investor in and independent contractor consultant to Client Defendants" and had independent industry influence. (Br. Opp'n Defs.' Mot. Dismiss at 9–10; *see* Compl. ¶ 18.) That allegation—at minimum—creates a question of fact as to whether an agency relationship exists. *See* Restatement (Second) of Agency § 2 (Am. L. Inst. 1958) (noting that an independent contractor is not subject to the control of the person or entity for whom he performs work). It is therefore premature for the court to rule that Butcher was Client Defendants' agent, and Defendants' arguments that the fraud claim should be dismissed on that ground fails.[8] *See Acordia of Va. Ins. Agency, Inc.*, 560 S.E.2d at 250; *Broadhead v. Watterson*, No. 5:15-cv-00020, 2016 WL 742127, at \*6–7 (W.D. Va.

---

[8] Even if Butcher was Client Defendants' agent, Defendants' argument would still fall short because the agent of a business can be held personally liable for intentional torts he commits—including fraud based on misrepresentation—when acting within the scope of his agency. *See Colonial Ford*, 325 S.E.2d at 94; Restatement (Third) of Agency § 7.01 (Am. L. Inst. 2006) ("An agent is subject to liability to a third party harmed by the agent's tortious conduct. . . . [A]n actor remains subject to liability although the actor acts as an agent or an employee, with actual or apparent authority, or within the scope of employment."); *see also Boykin v. Hermitage Realty*, 360 S.E.2d 177, 178–79 (Va. 1987) (discussing how a real estate agent can be liable for fraud related to a property sale even though she was not a party to the transaction).

Feb. 24, 2016) (declining to find, on a motion to dismiss, that a consultant providing services to a business was the business's agent).

### b.  Disclosure Obligations

Defendants also contend that Butcher cannot be liable for fraud because he did not have an independent duty to disclose information to NetTax. (*See* Br. Supp. Defs.' Mot. Dismiss at 9–10; Reply Br. Supp. Defs.' Mot. Dismiss at 3–4.) This argument, however, misconstrues Virginia's law on fraud. Although a party's nondisclosure does not always constitute fraud, when a party intentionally misrepresents a material fact—like the intention to perform under a contract—that misrepresentation is sufficient to form the basis of a fraud claim. *See Colonial Ford*, 325 S.E.2d at 94; *Boykin*, 360 S.E.2d at 178–79. Defendants' argument therefore does not support dismissing the fraud claim against Butcher.

In sum, each of Defendants' arguments for dismissing NetTax's fraud claim are unpersuasive at this stage, and the court will allow the claim to survive.

### 3.  Business Conspiracy

NetTax's final claim in the complaint—which Defendants move to dismiss—alleges statutory business conspiracy, in violation of Va. Code Ann. § 18.2-499. Virginia's business-conspiracy law provides for civil relief if a plaintiff establishes: "(1) a combination of two or more persons for the purpose of willfully and maliciously injuring [the] plaintiff in his business; and (2) resulting damage to [the] plaintiff." *Dunlap v. Cottman Transmission Sys., LLC*, 754 S.E.2d 313, 317 (Va. 2014) (internal citation omitted); *see* Va. Code Ann. 18.2-499–500. "It is not necessary for a plaintiff to prove that the defendant conspirators acted with actual malice, *i.e.*, ill-will, hatred, or spite . . . . Rather, a plaintiff must establish . . . only that the conspirators

acted with legal malice, *i.e.*, intentionally, purposely, and without lawful justification." *Dunlap*, 754 S.E.2d at 317 (cleaned up). A cause of action for statutory business conspiracy must be based on an act that is itself wrongful or tortious, not merely a breach of contract. *See id.* at 317–19. And, like fraud, it also must be pleaded with particularity. *Danville Com. Indus. Storage, LLC v. Selective Ins. Co. of S.C.*, No. 4:18-cv-00050, 2018 WL 6625078, at *4 (W.D. Va. Dec. 18, 2018) (citing *Gov't Emps. Ins. Co. v. Google, Inc.*, 330 F. Supp. 2d, 700, 706 (E.D. Va. 2004)).

Defendants say that NetTax's business-conspiracy claim fails for three reasons: (1) the doctrine of intracorporate immunity makes the Defendants' alleged conspiracy a legal impossibility; (2) NetTax did not allege an actionable wrong under the business-conspiracy statute; and (3) NetTax only pleaded damages associated with the alleged breach of contract. (Br. Supp. Defs.' Mot. Dismiss at 12–17; Reply Br. Supp. Defs.' Mot. Dismiss at 7–10.) Again, these arguments are unpersuasive—at least at this early stage.

### i.  Intracorporate Immunity

Defendants first argue that intracorporate immunity shields them from NetTax's business-conspiracy claim because they are all part of one entity for purposes of this matter. Defendants are correct that a single entity cannot conspire with itself. *Perk v. Vector Res. Grp., Ltd.*, 485 S.E.2d 140, 144 (Va. 1997); *Darton Env't, Inc. v. FJUVO Collections, LLC*, 332 F. Supp. 3d 1022, 1035 (W.D. Va. 2018). And an entity's agents cannot conspire with that entity. *See Darton Env't, Inc.*, 332 F. Supp. 3d at 1035. But NetTax does not allege that Posso and COI are the same entity, have a parent-subsidiary relationship, or fall under common ownership. To the contrary, the complaint states that Posso and COI are separate legal entities for which NetTax provided separate work product. (Compl. ¶¶ 2–3, 13–14.) Although certain parts of

the complaint indicate that Client Defendants are under common control—*e.g.*, the same person jointly signed the Agreement for them—the complaint must be viewed in the light most favorable to NetTax at this time. In that light, NetTax's allegation that Posso and COI are separate entities prevents the intracorporate immunity doctrine from barring its business-conspiracy claim on a motion to dismiss. Furthermore, because the complaint fails to establish that Butcher is an agent of Client Defendants, *see supra* section III.B.2.ii.a, intracorporate immunity does not prevent NetTax's business-conspiracy claim from proceeding against him either.

### ii. Actionable Wrong

Second, Defendants contend that NetTax does not allege an actionable wrong under the business-conspiracy statute. Admittedly, the complaint is not entirely clear on the actionable wrong or wrongs that underlie NetTax's business-conspiracy claim. The paragraphs under Count III of the complaint largely focus on Defendants' supposed extortion, including Butcher's statement that he was going to 'choke out' NetTax. (*See* Compl. ¶¶ 38–53.) But this section of the complaint also incorporates NetTax's earlier allegations and states that Defendants' "fraud" was one of the unlawful purposes that violated Virginia's business-conspiracy statute. (*Id.* ¶¶ 37, 50.)

Fraud is an intentional tort, *Tingler*, 834 S.E.2d at 255 n.11, which NetTax sufficiently pleaded, *see supra* section III.B.2. An intentional tort is an actionable wrong for the purposes of Virginia's statutory business-conspiracy law. *See Dunlap*, 754 S.E.2d at 317–19. Therefore, the court rejects Defendants' argument that the complaint does not set forth a wrongful act for this claim.

### iii. Damages

Defendants' third argument that the business-conspiracy claim should be dismissed is that NetTax did not plead damages other than those associated with a breach of contract. (Br. Supp. Defs.' Mot. Dismiss at 17.) NetTax, however, claims that Defendants' alleged business conspiracy caused it to sustain damages "in excess of $1,000,000," plus costs, fees, and expenses. (Compl. ¶ 52.) As such, Defendants' argument here fails for the same reasons that its similar argument for the fraud claim fails. *See supra* section III.B.2.i.c.

Overall, because Defendants are not protected by intracorporate immunity at the motion to dismiss stage and NetTax sufficiently alleges that it was damaged from Defendants working together to commit fraud, the business-conspiracy claim must survive.

### C. Striking Damages in Excess of the Fee

Finally, the court will deny Defendants' Rule 12(f) motion to strike NetTax's claimed damages that exceed the Fee. Defendants contend that the Agreement's limitation-of-liability provision caps the potential damages that they face at the Fee amount. (Br. Supp. Defs.' Mot. Dismiss at 17–18; Reply Br. Supp. Defs.' Mot. Dismiss at 11.) The Agreement's relevant provision, titled "Mutual Indemnification and Limitation of Liability," states the following:

> The PARTIES agree to indemnify and hold harmless each other, including its directors, officers, employees and agents from and against all losses, suits, claims, damages, penalties, causes of action, liabilities, finds [sic], demands, costs or expenses of any kind or nature. Notwithstanding the foregoing, no amounts pursuant to an indemnification claim shall exceed the amount of the fee. Excluding damages, costs and expenses arising from the above, neither PARTY shall be liable to the other party for damages. Notwithstanding the foregoing, no damages associated with this agreement shall exceed the fee.

(Compl. Ex. A at 2.)

Capping NetTax's potential damages at the Fee for fraud and business conspiracy would contravene Virginia's public policy. Virginia law aligns with "leading authorities in the area of contracts and . . . cases in other jurisdictions" in refusing to enforce contractual provisions that attempt to limit a party's tort liability for its own intentional misconduct. *See All Bus. Sols., Inc. v. NationsLine, Inc.*, 629 F. Supp. 2d 553, 560 (W.D. Va. 2009); Restatement (Second) of Contracts § 195 (Am. L. Inst. 1981) ("A term exempting a party from tort liability for harm caused intentionally or recklessly is unenforceable on grounds of public policy."); *cf. Ada Liss Grp. v. Sara Lee Corp.*, No. 06-cv-610, 2010 WL 3910433, at *9 (M.D.N.C. Apr. 27, 2010) (explaining how a contractual provision that limits a party's damages for intentional misconduct would be "noxious" and "circumvent tort law"). Because Defendants' motion to strike runs contrary to this principle in trying to impose the limitation-of-liability provision as a damages cap for fraud, an intentional tort, and business conspiracy—which is based, in part, on Defendants' alleged fraud—the court will deny the motion to strike. *See Bender-Miller Co. v. Thomwood Farms, Inc.*, 179 S.E.2d 636, 638 (Va. 1971) (stating that limitation-of-liability provisions cannot be "against public policy").

## IV.   CONCLUSION

For these reasons, the court will deny Butcher's motion to dismiss for lack of personal jurisdiction and Defendants' partial motion to dismiss for failure to state a claim and to strike.

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

**ENTERED** this 23rd day of January, 2024.

_/s/ Thomas T. Cullen_
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE